**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LORI COWEN and ROCHELLE IBARROLA, individually and on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| | ) | Case No. 1:17-cv-01530 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| LENNY & LARRY'S, INC., | ) ) | |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Lori Cowen and Rochelle Ibarrola (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this Class Action Complaint against Defendant Lenny & Larry's, Inc. ("Defendant"), and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their counsel as follows:

## NATURE OF THE ACTION

1. This is a consumer class action brought on behalf of consumers who purchased the food product Lenny & Larry's The Complete Cookie (the "Product")[1] from Defendant. Defendant uniformly advertises its Product as containing "Plant-Based Protein to Build Lean Muscle." "[T]hey're Vegan, Non-GMO, Kosher, and contain no soy, artificial sweeteners or

---

[1] The Complete Cookie has eleven (11) different flavor variations of its full size cookie, including; Coconut Chocolate Chip, Double Chocolate Peanut Butter Swirl, Chocolate Chip, Double Chocolate, Snickerdoodle, Birthday Cake, Peanut Butter, White Chocolate Macadamia, Lemon Poppy Seed, Oatmeal Raisin, and Pumpkin Spice. The Complete Cookie also has three (3) different flavor variations of its 2 oz. size product, including; Birthday Cake, Snickerdoodle and Chocolate Chip.

sugar alcohols." The Product is designed and targeted toward active, healthy individuals who are looking for convenient ways to eat healthy.

2.      Defendant engaged in unfair and/or deceptive business practices by misrepresenting the nature and quality of the Product on the Product label and as a result Defendant was unjustly enriched.

3.      Defendant's unfair and deceptive practices include, inter alia, uniformly formulating and manufacturing a product that does not meet the numerous false and misleading claims on the labels of the Product. These false and misleading claims include, but are not limited to, statements relating to protein content in regard to the percent of daily value, sources and quality of the protein content, and the actual amount of protein in the Product.

4.      Further, Defendant does not comply with Federal and parallel State regulations regarding the testing methodology of its protein content and daily value percentage, making the Product's protein content claims false and misleading.

5.      Plaintiff and each of the Class Members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages and injunctive relief.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of States other than the State in which Defendant is incorporated and has its principal place of business.

7.      Diversity jurisdiction exists because Plaintiffs are citizens of Illinois and Michigan and Defendant is a citizen of California.

8.      This Court has personal jurisdiction over Defendant because Defendant conducts business in Illinois. Defendant has marketed, distributed, and sold the Product in Illinois. Defendant has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this state through its sales and marketing within this State to render the exercise of jurisdiction by this Court permissible.

9.      In addition to selling the Product in various retail stores and via online retailers, this Court has personal jurisdiction over Defendant because its internet website allows consumers to order and ship the Product anywhere in the United States, including in this District. Defendant conducts business throughout the United States, including in the State of Illinois and in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

11.     Plaintiff Lori Cowen is a citizen of the State of Michigan. At all relevant times to this matter, she resided, and continues to reside, in West Bloomfield, Michigan. Plaintiff has purchased the Products numerous times over the past few years from Vitamin Shoppe Store #255, located in Farmington Hills, MI, among other retailers.

12.     Plaintiff Rochelle Ibarrola is a citizen of the State of Illinois. At all relevant times to this matter, she resided, and continues to reside, in Chicago, Illinois.  Plaintiff purchased the Products numerous times from her gym XSport Fitness Logan Square in Chicago, Illinois.

13.     Defendant Lenny & Larry's, Inc. is a privately-held California corporation with its principal place of business located at 14300 Arminta Street, Panorama City, CA 91402.

## GENERAL ALLEGATIONS

14.     Defendant manufactures, markets and sells the Product, "The Complete Cookie," on its own retail website and in retail outlets, including health food stores and nutritional supplement stores, throughout the United States, including the States of Illinois and Michigan. The Product is marketed as "quality baked goods that not only taste great, but also contain healthy amounts of beneficial protein."  Defendant has positioned the Product in the protein product marketplace, a marketplace that expects sales of protein products in general to grow 62% and reach U.S. $7.8 billion by 2018.[2]

15.     Defendant claims that the Product has "16g of protein … in every 4 oz cookie" and claims that the Product was developed "as a better way to feed your muscles while enjoying something tasty."  Indeed, Defendant's website boasts:  "Protein is what we're all about!  We have spent years perfecting our unique blend of naturally occurring [sic] vegetable proteins …" and Defendant markets the Product under the slogan "Make protein fun and delicious." Defendant repeats these protein content claims on the Product labeling stating that there are "16g Protein per cookie":

---

[2] *Consumer Awareness Strengthens Sports Nutrition Market*, NATURAL PRODUCTS INSIDER (Oct. 16, 2014),  http://www.naturalproductsinsider.com/News/2014/10/Consumer-Awareness-Strengthens-Sports-Nutrition-M.aspx.



16. These protein content claims are again repeated in the Nutrition Facts section of the Product's label, where Defendant lists the Product as having 8 grams of protein for 2 oz serving (or 16 grams per 4 oz cookie) with 16% daily value ("DV") for protein per each 2 oz serving:

**Nutrition Facts**

Serv. Size 2.0 oz (56.5g)
Servings Per Container 2

**Calories** 180
  **Calories from Fat** 40

*Percent Daily Values (DV) are based on a 2,000 calorie diet.

| Amount/Serving | %DV* | Amount/Serving | %DV* |
|---|---|---|---|
| **Total Fat** 4g | 6% | **Sodium** 190mg | 8% |
| Sat. Fat 0.5g | 3% | **Total Carb.** 27g | 9% |
| Monounsat. Fat 0.5g | | Dietary Fiber 4g | 16% |
| Trans Fat 0g | | Sugars 15g | |
| | | Sugar Alcohols 0g | |
| **Cholesterol** 0mg | 0% | **Protein** 8g | 16% |

Vitamin A 2% • Vitamin C 0% • Calcium 7% • Iron 10%

**INGREDIENTS:** (100% VEGAN) ENRICHED WHEAT FLOUR (WHEAT FLOUR [UNBLEACHED], NIACIN, IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), CANE SUGAR, PALM MARGARINE (PALM OIL, PALM KERNEL OIL, SUNFLOWER OIL, WATER, SALT, VEGETABLE MONOGLYCERIDES, SUNFLOWER LECITHIN, FLAVORING, CITRIC ACID, VITAMIN A PALMITATE, VITAMIN D3), PROTEIN BLEND (PEA PROTEIN ISOLATE, BROWN RICE PROTEIN, WHEAT GLUTEN), OAT FIBER, CHICORY ROOT FIBER, MOLASSES, VANILLA FLAVOR, CINNAMON, SALT, BAKING SODA, FLAXSEED, OREGANO, SUNFLOWER LECITHIN.

**ALLERGENS:** CONTAINS WHEAT. MANUFACTURED IN A FACILITY THAT ALSO PROCESSES PEANUT, TREE NUT, SOY, COCONUT, MILK AND EGG.

**DIST BY: LENNY & LARRY'S, INC.** LOS ANGELES, CA 91402 • 800.536.6952          ⓤⓓ PRODUCT OF USA 🇺🇸

17.     Defendant's labeling is false and deceptive in a number of respects.  As a preliminary matter, Defendant's labels grossly inflate the actual protein content of the Product. Plaintiffs' counsel performed testing on the Product for protein content, and it was determined to be far below the amount of protein claimed on the Product's label.  Based on Plaintiff's testing, the Product commonly contains between 4 and 9 grams of protein per 4 oz cookie, far below the 16 grams of protein content claim made by Defendant.  In short, Defendant is marketing a high protein cookie that simply doesn't deliver on the promised protein content.

18.     Additionally, Defendant's labeling is false and deceptive in that it miscalculates the % DV of protein. The United States Food and Drug Administration (the "FDA") has

published a food labeling guide that specifically addresses nutrition labeling and protein claims. According to the FDA, "[t]he percent of the DRV is required if a protein claim is made for the product or if the product is represented or purported to be for use by infants or children under 4 years of age."[3]  Here, the Product has a protein claim on the label and is required to have the % DV for protein listed in the Nutritional Facts section of the label.

19.     According to the Federal Food, Drug and Cosmetic Act ("FDCA"), where a product label states the percent of DV for protein (as it does, here), the label percentage values must be ascertained via a testing methodology known as the Protein Digestibility Amino Acid Corrected Score ("PDCAAS"), which measures the actual **quality** of the protein contained in a product.

20.     The PDCAAS has been adopted by the Food and Agriculture Organization of the United Nations and the World Health Organization as the preferred method for the measurement of the protein value in human nutrition, and the calculation formula for the PDCAAS is set forth in the FDCA.  The PDCAAS shall be determined by the methods provided in sections 5.4.1, 7.2.1, and 8.00 in "Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation," Rome, 1990.   21 C.F.R. § 101.9(c)(7)(ii).

21.     The PDCAAS calculation referenced under the FDCA is:

$$PDCAAS(\%) = \frac{mg \text{ of limiting amino acid in } 1 \text{ } g \text{ of test protein}}{mg \text{ of same amino acid in } 1 \text{ } g \text{ of reference protein}} \times fecal \text{ } true \text{ } digestibility \text{ } (\%) \times 100$$

22.     The PDCAAS method does not simply calculate protein content by nitrogen analysis, but instead requires the manufacturer to determine the amount of essential amino acids contained within a product.  This testing method ensures that consumers are being informed

---

[3] *Guidance for Industry: A Food Labeling Guide (7. Nutrition Labeling; Questions G1 through P8)*, U.S. FOOD & DRUG ADMINISTRATION, http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation /LabelingNutrition/ucm064894.htm#declare (last visited September 7, 2016).

about the "quality" of the protein contained a product. PDCAAS measures protein quality based on human essential amino acid requirements and our ability to digest it. The test protein is compared to a standard amino acid profile and is given a score from 0-1.0, with a score of 1.0 indicating maximum amino acid digestibility. Common protein supplements (whey, casein, and soy) all receive 1.0 scores. Meat and soybeans (0.9), vegetables and other legumes (0.7), and whole wheat and peanuts (0.25-0.55) all provide diminished protein digestibility. The PDCAAS is currently considered the most reliable score of protein quality for human nutrition.[4]

23. As shown above, Defendant's Nutrition Facts section lists the Product as having 16% DV for protein. The 16% DV is based on the 50-gram DV required by the FDCA and the 8-gram per serving protein claim on the Product (8 grams / 50 grams = 16% DV). 21 C.F.R. § 101.9(c)(7)(iii).

24. When protein is listed as a percent of the 50-gram DV and expressed as percent of DV, the percent of DV is calculated by correcting the actual amount of protein in grams per serving by multiplying the amount by its amino acid score corrected for protein digestibility, dividing by 50 grams, and converting to a percentage. 21 C.F.R. § 101.9(c)(7)(ii). Defendant, however, simply used the nitrogen testing with a factor of 6.25 to determine the protein content. If Defendant had made no protein content claim on the label of the Product, and if it did not include the percent of DV of protein under the Nutrition Facts section, it could legally use this method. Given that Defendant's Product contains a protein claim on the label and lists protein as the percentage of DV in the Nutrition Facts section, Defendant is thus statutorily obligated under the FDCA to determine the protein content and percent of DV by using the PDCAAS, which it did not.

---

[4] Pasha Gurevich, *Protein Quality-The 4 Most Important Metrics*, LABDOOR MAGAZINE (May 20, 2014), https://labdoor.com/article/protein-quality-the-4-most-important-metrics.

25.     Defendant has failed to comply with the section for PDCAAS and determining the protein content making up the percent of DV. Defendant did not test for individual amino acids, and it did not use the proper factors as referred to in the FDCA. Defendant simply took the nitrogen count and then used the factor for whey protein, thereby overstating the percent of DV. Consequently, Defendant is in violation of 21 C.F.R. § 101.9(c)(7)(ii).

26.     Also, the ingredients listed under the Product's "Protein Blend" (pea protein, brown rice protein and wheat gluten), have PDCAAS of approximately 0.70, 0.50, and 0.25, respectively.[5]  Therefore, even if the protein content was 16 grams per cookie as the Defendant suggests, the percent of DV would be reduced because of the inclusion of a low quality proteins.

27.     Because the PDCAAS is used to determine "protein quality," Defendant intentionally miscalculated the PDCAAS for the Product. The Product's label claim "16g Protein" is objectively false because the PDCAAS was not tested for properly by Defendant. Also, given that Defendant's "16g Protein" is a protein content claim, as referenced in 21 C.F.R. § 101.9(c)(7)(i), because it is not based on the PDCAAS, it is false and misleading.

28.     Despite having knowledge that miscalculating the percent of DV of protein and under-dosing the protein content is misleading to consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell the Product in a misleading and deceptive manner in order to increase its sales and maximize its profits.

29.     Thus, Defendant's consumers pay an inflated price for the Product, which delivers less actual and quality protein than they reasonably expect to receive.

---

[5] *See* Hoffman, Jay R.; Falvo, Michael J. (2004). "Protein – Which is Best" (PDF). *Journal of Sports Science and Medicine*. 3 (3): 118–30; *see also* Suárez López MM, Kizlansky A, López LB (2006). "[Assessment of protein quality in foods by calculating the amino acids score corrected by digestibility]". *Nutrición Hospitalaria* (in Spanish). 21 (1): 47–51. PMID 16562812.

30. Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states,[6] which deem food misbranded when "its labeling is false or misleading in any particular."

31. Defendant's false, deceptive and misleading label statements are unlawful under State Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

32. Under the Illinois Food, Drug and Cosmetic Act, Illinois has expressly adopted the federal food labeling requirements as its own and has indicated that "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21(j). Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

33. Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "[a] food shall be deemed to be misbranded—If (1) its labeling is false or misleading in any particular."

34. Similar to the FDCA, Michigan prohibits the misbranding of food through the Food Law Act 92 of 2000 § 289.1101, *et seq.* Michigan's Food Law Act provides that food is misbranded "if its labeling is false or misleading in any particular" and explicitly incorporates by reference, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA." *Id.*

35. Also, the Illinois Compiled Statutes have incorporated the exact language of the FDCA by expressly stating, "[a] food is misbranded - (a) If its labeling is false or misleading in any particular." 410 ILCS 620/11.

---

[6] *See, e.g.*, 410 ILCS 620/11.

36. The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

37. Also, the Illinois Consumer Fraud and Deceptive Business Practices Act protects consumers when purchasing products, including Defendant's Product, and provides,

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . .

815 ILCS 505/2.

38. Defendant intended for Plaintiffs and the other Class Members to be misled.

39. Defendant's misleading and deceptive practices proximately caused harm to the Plaintiffs and the Classes.

## CLASS ACTION ALLEGATIONS

40. Plaintiffs bring this class action lawsuit on behalf of themselves and proposed Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

41. Plaintiffs seek certification of the following Classes:

**National Class:** All persons in the United States who purchased the Product.

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Products.[7]

---

[7] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash Rev. Code § 19.86.010, *et seq.*).

**Illinois Subclass:** All persons in the State of Illinois who purchased the Product.

**Michigan Subclass:** All persons in the State of Michigan who purchased the Product.

Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

42.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to hundreds of thousands. The precise number or identification of members of the Classes are presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records as Defendant sells directly to some Class members, and the books and records of the Defendant's retail partners. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

44.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a)   The true nature of the protein content in the Product;

b) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

c) Whether Defendant's actions violate the State consumer fraud statutes invoked herein;

d) Whether Defendant breached an implied warranty to the Plaintiffs and Class Members.

e) Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class Members.

45.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

46.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Classes were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

47.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the other members of the Classes they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all members of the Classes. Accordingly, the interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

48. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

49. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of State Consumer Fraud Acts**
**(On Behalf of the Consumer Fraud Multi-State Class[8])**

50.     Plaintiffs  incorporates the foregoing paragraphs as if fully set forth herein.

51.      The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

52.     Defendant intended that Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by their deceptive conduct.

53.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

54.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

### SECOND CLAIM FOR RELIEF
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**(In the Alternative to the First Claim for Relief and On Behalf of the Illinois Subclass)**

55.     Plaintiff Ibarrola incorporates the foregoing paragraphs as if fully set forth herein.

---

[8] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code § 17200, *et seq*.); Florida (Fla. Stat. § 501.201, *et seq*.); Illinois (815 ILCS 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws § 445.901, *et seq*.); Minnesota (Minn. Stat. § 325F.67, *et seq*.); Missouri (Mo. Rev. Stat. 407.010, *et seq*.); New Jersey (N.J. Stat. § 56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law § 349, *et seq*.); and Washington (Wash Rev. Code § 19.86.010, *et seq*.).

56.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate its purpose.

57.     Defendant intended that Plaintiff Ibarrola and each of the other members of the Illinois Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

58.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff Ibarrola and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

59.     Had Defendant disclosed the true quality of its Product, Plaintiff Ibarrola and the other class members would  not have purchased the Product, or would have paid substantially less for the Product.

60.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**THIRD CLAIM FOR RELIEF**
**Violation of the Michigan Consumer Fraud Act**
**(In the Alternative to Count I and On Behalf of the Michigan Subclass)**

61.     Plaintiff Cowen incorporates the foregoing paragraphs as if fully set forth herein.

62.     Plaintiff Cowen and each of the members of the Michigan Subclass acted as consumers, purchasing the Product for personal, family or household purposes.

63.     The Product qualifies as a "good" under Michigan's Consumer Protection Act. Further, Plaintiff Cowen's and the members of the Michigan Subclass' purchases of the Product constitutes a "trade and commerce" under the Act.

64.     Defendant, in connection with the sale of the Product, engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices.

65.     Defendant concealed, suppressed, or omitted material facts with the intent that Plaintiff Cowen and Class members rely upon such concealment, suppression or omissions. Defendant's objectively deceptive conduct had the capacity to deceive reasonable consumers under the circumstances.

66.     Defendant's general course of conduct impacted the public because the acts were part of a generalized course of conduct affecting numerous consumers.

67.     Defendant's conduct, which included deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts, caused the resulted injury in fact and an ascertainable loss of money or property to Plaintiff Cowen and Class members. The resulting injury to Plaintiff Cowen and the members of the Michigan Subclass was reasonably foreseeable by Defendant.

68.     Plaintiff Cowen, on behalf of herself and other members of the Michigan Subclass, seek to recover the damages suffered, including actual and punitive damages, restitution of all monies wrongfully acquired by Defendant as a result of this misconduct, injunctive and declaratory relief, attorney fees, costs of suit, and other non-monetary relief as appropriate.

69.     Based on Defendant's acts stated herein, the Defendant is in violation of the Michigan Consumer Protection Act, M.C.L. § 445.901, *et seq*.

## FOURTH CLAIM FOR RELIEF
### Breach of Implied Warranty
### (On Behalf of the National Class and the Illinois and Michigan Subclasses)

70.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

71.    Plaintiffs bring this claim against Defendant on behalf of themselves, the National Class, the Consumer Fraud Multistate Class, and the Illinois and Michigan Subclasses (for purposes of this Count, the "Classes").

72.    Defendant knew and intended that the members of the Classes would be the ultimate consumers of the Product.

73.    Defendant sold the Product into the stream of commerce, and Defendant is a merchant with respect to goods such as the Product at issue.

74.    The Product cannot be altered once it enters the stream of commerce.

75.    The Product was not merchantable at the time of sale, because it did not conform – nor could it have conformed – to Defendant's representations as alleged herein.

76.    Defendant was aware or should have been aware that its Product was not of merchantable quality when it entered the stream of commerce and at the point of sale.

77.    Plaintiffs and the other members of the Classes did not receive the benefit of their bargain in purchasing the Product.

78.    Because of Defendant's breach of the implied warranty, Plaintiffs and the other members of the Classes were injured.

79.    As a result of Defendant's breach, Plaintiffs and the other members of the Classes have sustained damages.

### FIFTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(In The Alternative to Count IV and On Behalf of the National Class
and the Illinois and Michigan Subclasses)**

80.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein, and raise this cause of action in the alternative to Plaintiffs' implied warranty claim.

81. Plaintiffs and the other members of the Classes conferred benefits on Defendant by purchasing the Product.

82. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and the other members of the Classes' purchase of the Product. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Classes because they would have not purchased the Product if the true facts would have been known.

83. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the Classes for their unjust enrichment, as ordered by the Court.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Class Action Complaint, pray for judgment and relief against Defendant as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b) For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c)    For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d)    For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e)    For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f)    For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g)    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: February 28, 2017

Respectfully submitted,

By:   *Edward A. Wallace*
      Edward A. Wallace

Edward A. Wallace
Amy E. Keller
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
T    312.246.2222
F    312.346.0022
eaw@wexlerwallace.com
aek@wexlerwallace.com

Nick Suciu III
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Road
Bloomfield Hills, Michigan 48302
T    313.303.3472
nicksuciu@bmslawyers.com

Steven Wasserman (*pro hac vice* to be submitted)
Kathryn S. Marshall (*pro hac vice* to be submitted)

Karin R. Leavitt (*pro hac vice* to be submitted)
**WASSERMAN LAW GROUP**
5567 Reseda Blvd., Suite 330
Tarzana, CA 91356
T        818.705.6800
F        818.705.8634
skw@wassermanlawgroup.com
ksm@wassermanlawgroup.com
krl@wessermanlawgroup.com


*Counsel for Plaintiffs and the Putative Classes*