**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LORI COWEN, ROCHELLE IBARROLA, and AVA ADAMES, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 17 CV 1530 ) |
| | ) Judge Robert W. Gettleman |
| LENNY & LARRY'S, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lori Cowen, Rochelle Ibarrola, and Ava Adames filed a seven-count amended complaint against defendant Lenny & Larry's based on plaintiffs' purchases of several of defendant's products, the Complete Cookie. Plaintiffs' amended complaint alleges the following: violation of several states' consumer protection statutes (Count I); violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1, et seq., (Count II); violation of the Pennsylvania Consumer Protection Law ("PCPL"), 73 Pa. Stat. § 201, et seq. (Count III);[1] breach of express warranty (Count IV); breach of implied warranty (Count V); negligent misrepresentation (Count VI); intentional misrepresentation (Count VII); and unjust enrichment (Count VIII). Defendant has moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6), and to strike claims in the amended complaint. For the reasons discussed below, defendant's motion is granted in part and denied in part.

---

[1] Count I is pled on behalf of a putative consumer fraud multi-state class. Counts II and III are pled in the alternative to Count I, and on behalf of Illinois and Pennsylvania subclasses. All other counts are pled on behalf of a national class and the subclasses.

## BACKGROUND[2]

Defendant manufactures and sells the Complete Cookie online and in retail outlets, allegedly targeting the "protein and health foods marketplace." The Complete Cookie is sold in two sizes and eleven different varieties. The one product label plaintiffs provided to the court describes the Snickerdoodle variety of the Complete Cookie as "baked nutrition" with sixteen grams of protein and eight grams of fiber. Additionally, the label states that the Snickerdoodle Complete Cookie is vegan, contains no eggs, dairy, or soy, and is non-gmo. Plaintiff Lori Cowen is a Michigan resident who allegedly purchased the chocolate chip, double chocolate chip, and birthday cake varieties of the Complete Cookie "numerous times over the past few years" in her home state. Plaintiff Rochelle Ibarrola is an Illinois resident who allegedly purchased the snickerdoodle, chocolate chip, and peanut butter varieties of the Complete Cookie "numerous times" in her home state. Plaintiff Ava Adames is a Pennsylvania resident who allegedly purchased the chocolate chip, snickerdoodle, and birthday cake varieties of the Complete Cookie "numerous times" in her home state and from Amazon.com.

Plaintiffs allege that the Complete Cookies' labels are false and deceptive for a number of reasons. Plaintiffs first allege that the labels overstate the Complete Cookies' protein content. Next, plaintiffs allege that the labels understate the content of other nutrients, specifically calories, carbohydrates, fats, and sugars. Additionally, plaintiffs allege that the labels miscalculate, and therefore overstate, the percent daily value of protein in the Complete Cookie. According to plaintiffs, these misrepresentations violate the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, et seq., and similar state laws. Plaintiffs bring their claims on behalf of five classes: (1) a national class of all people who purchased the Complete Cookie in the

---

[2] The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

United States; (2) a consumer fraud multi-state class of all people who purchased the Complete Cookie in California, Illinois, Missouri, New Jersey, and New York; (3) a subclass of people who purchased the Complete Cookie in Illinois; (4) a subclass of people who purchased the Complete Cookie in Michigan; and (5) a subclass of people who purchased the Complete Cookie in Pennsylvania.

Defendant moved to dismiss the amended complaint on a number of grounds. First, defendant argues that plaintiffs lack standing for any variety of the Complete Cookie that they did not purchase. Second, defendants assert that plaintiffs cannot maintain a national or multi-state class, and those claims should be denied or stricken. Finally, defendants argue that plaintiffs' claims fail to satisfy the particularity requirements of Fed. R. Civ. P. 9(b).

## DISCUSSION

### I. Standard of Review

A motion brought under Rule 12(b)(6) challenges the sufficiency of the complaint. Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Though short and plain, the pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Id.

This standard demands that a complaint contain sufficient factual matter to state a claim that is plausible on its face and allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When ruling on a Rule 12(b)(6) motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004).

Under Rule 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. As with a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in plaintiff's favor. Scanlan v. Eisenberg, 669 F.3d 838, 841 (7th Cir. 2012); see also Mutter v. Madigan, 2014 WL 562017, at *2 (N.D. Ill. Feb. 13, 2014). However, plaintiff bears the burden of establishing that the elements necessary for jurisdiction, including standing, have been met. Scanlan, 669 F.3d at 841—42. "In ruling on a 12(b)(1) motion, the court may look outside of the complaint's allegations and consider whatever evidence has been submitted on the issue of jurisdiction." Mutter, 2014 WL 562017, at *2; see also Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995).

Under Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requirement is met when the complaint alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." DiLeo v. Earnst & Young, 901 F.2d 624, 627 (7th Cir. 1990). A complaint that provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud satisfies Rule 9(b). Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992). Rule 9(b)'s specificity requirements are less

4

stringent where the details of the fraud "are within the defendant's exclusive knowledge." Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994).

**II. Analysis**

    **A.    Standing**

Defendant argues that plaintiffs lack Article III standing to bring claims for varieties of the Complete Cookie they did not purchase. According to plaintiffs, this argument is premature prior to the class certification stage, and plaintiffs may bring claims for products that are substantially similar to those they did purchase. The court disagrees. Both parties acknowledge that "[t]he law on whether an individual has standing to represent putative class members for products he or she did not purchase is unsettled across the country." Kisting v. Gregg Appliances, 2016 WL 5875007, at *3 (E.D. Wis. Oct. 7, 2016). Indeed, the law in this district is unsettled with regard to this issue. Id. at *3—4 (citing cases that adopt and reject the substantial similarity test). Each party cites the cases that support their position and, having reviewed those cases and the underlying rationales supporting both positions, the court declines to adopt the substantial similarity test.

To establish Article III standing, plaintiffs must establish that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (citation omitted). Plaintiffs cannot satisfy the first prong with respect to products they did not purchase, and they do not argue that they can. Instead, they urge the court to find that they have standing due to the substantial similarity of the Complete Cookie varieties, relying heavily on Wagner v. Gen. Nutrition Corp., 2017 WL 3070772 (N.D. Ill. July 19, 2017). In Wagner, however, the court did not engage in an Article III analysis because the parties

agreed that the plaintiff's claims should be analyzed under the substantial similarity test. See id. There is no such agreement in the instant case. Although it has not spoken directly on the substantial similarity test, the Seventh Circuit's position that plaintiffs cannot "piggy-back on the injuries of the unnamed class members" in order to acquire standing "through the back door of a class action" is clear. Payton v. County of Kane, 308 F.3d 673, 682 (7th Cir. 2002) (internal quotations and citations omitted). Consequently, this court is convinced that "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs," because "a person cannot predicate standing on injury which he does not share." Id. Plaintiffs' claims as to the products they did not purchase are therefore dismissed.

### B. The Multi-State and National Classes

Defendant also argues that plaintiffs' multi-state and national class claims should be dismissed or stricken because the amended complaint does not, and plaintiffs cannot, satisfy Rule 23 class elements such as typicality and predominance. This is so, according to defendant, because Illinois choice-of-law principles require the application of the law of the state in which the injured party resides or purchased the Complete Cookie, and applying conflicting laws of various states to plaintiffs' claims will be unmanageable on a multi-state or national basis. Defendant points to a number of material conflicts between the laws of the states that comprise plaintiffs' proposed multi-state class to support its position. Plaintiffs contend that differences in state laws do not preclude class certification and, much like defendant's standing argument, this argument is premature at the motion to dismiss stage.[3] Plaintiffs note that "choice-of-law issues

---

[3] Plaintiffs also argue that defendant cannot challenge the multi-state and national class claims on standing grounds because plaintiffs have standing to pursue claims in their home states, and their ability to represent individuals in other states is a class certification issue. Indeed, this court has recognized that standing issues may be postponed until after class certification. See In re Aftermarket Filters Antitrust Litig., 2009 WL 3754041 (N.D. Ill. Nov. 5,

6

in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation." Mirfasihi v. Fleet Mortg. Corp., 450 F.3d 745, 750 (7th Cir.2006). Plaintiffs misinterpret Mirfasihi, however, because "[n]owhere in the case does the Seventh Circuit address the timing of choice-of-law determinations relative to motions to dismiss." Lantz v. Am. Honda Motor Co., Inc., 2007 WL 1424614 (N.D. Ill. 2007) (citing Mirfasihi, 450 F.3d at 750).

In fact, "courts may strike class allegations at the pleading stage when they are facially and inherently deficient," particularly when the dispute is not factual and discovery is unnecessary to resolve it. Cholly v. Uptain Group, Inc., 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015). Rule 23(c)(1)(A) requires the court to determine whether to certify an action as a class action "[a]t an early practicable time." Rule 23(d)(1)(D) provides: "In conducting an action under this Rule, the court may issue orders that: . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly . . . ." District courts, both within this district and others, have held that a motion to strike class allegations, made pursuant to these provisions, is an appropriate devise to determine whether the case will proceed as a class action. Wright v. Family Dollar, Inc., 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010).

As an initial matter, federal courts sitting in Illinois follow Illinois' choice-of-law rule in determining which state's law governs a plaintiff's state law claims. Illinois has adopted the most significant relationship test for deciding among conflicting laws. Ingersoll v. Klein, 262 N.E.2d 593, 595 (Ill. 1970). Under this test, the law of the place of the injury controls unless Illinois has a more significant relationship with the occurrence and with the parties. Id. When

---

2009). Because the court resolves this issue on class certification grounds, it need not address plaintiffs' standing argument.

applying the most significant relationship test, the court considers four factors: (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered. Id. at 596. The court must look at the contacts of each jurisdiction under these factors and then evaluate those contacts in light of the policies underlying the laws of those jurisdictions.

In the instant case, two of the three plaintiffs allege that they reside in states other than Illinois and that they purchased the Complete Cookie in their home states. With the exception of the one plaintiff who resides in Illinois, the complaint alleges no other facts tying any of defendant's alleged misconduct or the plaintiffs' alleged injuries to Illinois. Thus, under Illinois choice of law, the laws of the states where each of the plaintiffs reside (whether they be named plaintiffs or class members) govern the claims alleged in the complaint.

Defendant argues persuasively that applying the warranty, unjust enrichment, and misrepresentation laws of fifty different states, or even the five states that comprise the multi-state class, is unmanageable on a class-wide basis because those states' laws conflict in material ways; that is, the "essential requirements to establish a claim and the types of relief or remedies available" vary significantly. In re Fluidmaster, Inc., Water Connector Components Products Liab. Litig., 2017 WL 1196990, at *39 (N.D. Ill. Mar. 31, 2017). "Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002). Similarly, plaintiffs' multi-state class "cannot satisfy the commonality and superiority requirements of Rule 23(a) and 23(b)(3)" because "[n]o class action is proper unless all litigants are governed by the same legal rules." Id. at 1015.

Plaintiffs offer little response to defendant's in-depth analysis of the many ways in which the laws of the states that comprise the proposed classes conflict. Instead, plaintiffs urge the court to ignore conflicts in state law until plaintiffs move for class certification, as the court did in Rysewyk v. Sears Holdings Corp., 2015 WL 9259886 (N.D. Ill. Dec. 18, 2015). That decision, however, is inapposite. In Rysewyk, Judge Shah noted that the defendant, in moving to strike class allegations, carried the burden of demonstrating "that specific variations of laws between specific states preclude class treatment," and that the defendant "did not make such a showing." Id. at *8. In the instant case, however, defendant used five pages of its motion, in which it cited dozens of cases, to demonstrate "specific impediments" to class certification in the way of conflicting state laws.[4] Defendant's showing is a far cry from Rysewyk, where the defendants failed "to explain in any detail…how the relevant laws of the different states differ in material ways." Id. at *7. Instead, defendant's analysis "make[s] it apparent at this stage that individual questions will predominate over common ones" rather than "repeat[ing] in generic ways that the laws of different states are different." Id.

Accordingly, the court grants defendant's motion on these grounds and strikes all claims pled on behalf of the multi-state and national classes.

### C. Rule 9(b)

Defendant's final argument is that the complaint should be dismissed in its entirety for failure to comply with Rule 9(b). According to defendant, the complaint is deficient for

---

[4] Two examples are illustrative. First, the statutes of limitations vary widely in the states that comprise the proposed multi-state class: the consumer protection statutes in California, Illinois, and New York all have a three-year statute of limitations; Missouri's consumer protection statute has a five-year statute of limitations; and New Jersey's consumer protection statute has a six-year statute of limitations. See Doc. 35 at 13-14. Second, notice requirements vary significantly. The consumer protection statutes in California and Missouri require notice before a suit can be initiated, but the consumer protection statutes in Illinois, New York, and New Jersey have no such requirement. Id.

supplying the court with the label of only one variation of the Complete Cookie (Snickerdoodle) and not explicitly alleging that the labels for the other variations are the same or sufficiently similar. Additionally, defendant faults plaintiffs for failing to allege which size product they purchased (some variations of the Complete Cookie come in two sizes) and exactly when. The court declines to adopt defendant's hyper-technical interpretation of Rule 9(b). As explained above, Rule 9(b)'s heightened pleading standards are met when the complaint alleges "the who, what, when, where, and how," DiLeo, 901 F.2d at 627, and provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud. Midwest Grinding Co., 976 F.2d at 1020. Additionally, these specificity requirements are less stringent where the details of the fraud "are within the defendant's exclusive knowledge." Jepson, Inc., 34 F.3d at 1328.

Although the complaint could be more specific in some respects (such as when plaintiffs purchased the products), plaintiffs have minimally satisfied Rule 9(b) by alleging the following: (1) defendant (who); (2) made fraudulent representations (what); (3) on their website and the packaging of the Complete Cookies, which were purchased in plaintiffs' home states (where and how); (4) during the class period, or over the past few years (when). Because the complaint provides defendant with an outline of the alleged scheme that is sufficient to notify defendant of the alleged fraud, defendant's motion is denied on these grounds.

## CONCLUSION

For the reasons discussed above, the court grants in part and denies in part defendant's motion to dismiss and to strike class claims (doc. 35). Count I is dismissed and all claims pled

on behalf of the national class and multi-state subclass are stricken. Counts II-VIII remain, but with respect only to the Illinois, Michigan, and Pennsylvania classes. Plaintiff is directed to file a second amended complaint conforming to this opinion on or before November 3, 2017. Defendant is ordered to answer on or before November 30, 2017. The parties are directed to file a joint status report using this court's form on or before December 1, 2017. This case is set for a report on status on December 7, 2017, at 9:00 a.m.

**ENTER:** October 12, 2017

*[signature: Robert W. Gettleman]*

**Robert W. Gettleman**
**United States District Judge**