# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|   |   |
|---|---|
| ROCHELLE IBARROLA, AMANDA WELLS, and BARBARA WHALEN individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LENNY & LARRY'S, INC., <br><br> Defendant. | Case No. 1:17-cv-01530 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Young B. Kim <br><br> **JURY TRIAL DEMANDED** |

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs Rochelle Ibarrola, Amanda Wells, and Barbara Whalen (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this Third Amended Class Action Complaint against Defendant Lenny & Larry's, Inc. ("Defendant"), and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their counsel as follows:

## NATURE OF THE ACTION

1. This is a consumer class action brought on behalf of consumers who purchased the food product Lenny & Larry's The Complete Cookie (the "Product") from Defendant. Defendant uniformly advertises its Product as containing "Plant-Based Protein to Build Lean Muscle." "[T]hey're Vegan, Non-GMO, Kosher, and contain no soy, artificial sweeteners or sugar alcohols." The Product is designed and targeted toward active, healthy individuals who are looking for convenient ways to eat healthy.

2. Defendant engaged in unfair and/or deceptive business practices by misrepresenting the nature and quality of the Product on the Product's label and as a result Defendant was unjustly enriched.

3. Defendant's unfair and deceptive practices include, *inter alia*, uniformly formulating and manufacturing a product that does not meet the numerous false and misleading claims on the labels of the Product. These false and misleading claims include, but are not limited to, statements relating to: the actual amount of calories, carbohydrates, fat, protein and sugars; the percentage of daily value of these nutrients; and the sources and quality of the protein contained within the Product.

4. Further, Defendant does not comply with Federal and parallel State regulations regarding the testing methodology of its protein content and daily value percentage.

5. Plaintiffs and each of the Class Members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages and other relief.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of States other than the State in which Defendant is incorporated and has its principal place of business.

7. Diversity jurisdiction exists because Plaintiffs are citizens of Illinois and Defendant is a citizen of California.

8. This Court has personal jurisdiction over Defendant because Defendant conducts business in Illinois. Defendant has marketed, distributed, and sold the Product in Illinois. Defendant has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this state through its sales and marketing within this State to render the exercise of jurisdiction by this Court permissible.

9. In addition to selling the Product in various retail stores and via online retailers, this Court has personal jurisdiction over Defendant because its Internet website allows consumers to order and ship the Product anywhere in the United States, including in this District. Defendant conducts business throughout the United States, including in the State of Illinois and in this District.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

**PARTIES**

11. Plaintiff Rochelle Ibarrola is a citizen of the State of Illinois. At all relevant times to this matter, she resided, and continues to reside, in Chicago, Illinois. Plaintiff Ibarrola purchased the Product numerous times from her gym XSport Fitness Logan Square in Chicago, Illinois. Plaintiff Ibarrola has purchased the Peanut Butter, Chocolate Chip and SnickerDoodle flavors of the Product.

12. Plaintiff Amanda Wells is a citizen of the State of Illinois. At all relevant times to this matter, she resided, and continues to reside, in Springfield, Illinois. Plaintiff Wells purchased the Product numerous times from GNC and Walmart in Springfield, Illinois. Plaintiff

Wells has purchased the Chocolate Chip, Snickerdoodle, Oatmeal Raisin, and White Chocolate Macadamia flavors of the Product.

13. Plaintiff Barbara Whalen is a citizen of the State of Illinois. At all relevant times to this matter, she resided, and continues to reside, in Bloomingdale, Illinois. Plaintiff Whalen purchased the Product numerous times from Vitamin Shoppe in Bloomingdale, Illinois. Plaintiff Whalen has purchased the Peanut Butter, Chocolate Chip, Snickerdoodle, Double Chocolate, Birthday Cake, Pumpkin Spice, and Coconut Chocolate Chip flavors of the Product.

14. Defendant Lenny & Larry's, Inc. is a privately-held California corporation with its principal place of business located at 14300 Arminta Street, Panorama City, CA 91402.

**GENERAL ALLEGATIONS**

15. Defendant manufactures, markets and sells the product, "The Complete Cookie," on its own retail website and in retail outlets, including health food stores and nutritional supplement stores, throughout the United States, including the State of Illinois. The Product is marketed as "quality baked goods that not only taste great, but also contain healthy amounts of beneficial protein." Defendant has positioned the Product in the protein and health foods product marketplace, a marketplace that expects sales of protein products in general to grow 62% and reach U.S. $7.8 billion by 2018.[1]

*Misleading Nutrient Content Claims*

16. Defendant claims that the Product has "16g of protein … in every 4 oz cookie" and claims that the Product was developed "as a better way to feed your muscles while enjoying something tasty." Indeed, Defendant's website boasts: "Protein is what we're all about! We have spent years perfecting our unique blend of naturally occurring [sic] vegetable proteins …"

---

[1] *Consumer Awareness Strengthens Sports Nutrition Market*, NATURAL PRODUCT INSIDER (Oct. 16, 2014), http://www.naturalproductinsider.com/News/2014/10/Consumer-Awareness-Strengthens-Sports-Nutrition-M.aspx.

4

and Defendant markets the Product under the slogan "Make protein fun and delicious." Defendant repeats these protein content claims on the Product labeling stating that there are "16g Protein per cookie":



17. These protein content claims are again repeated in the Nutrition Facts section of the Product's label, where Defendant lists the Product as having 8 grams of protein for 2 oz serving (or 16 grams per 4 oz cookie) with 16% daily value ("DV") for protein per each 2 oz serving:



18.     Defendant's labeling is false and deceptive in a number of respects.  As a preliminary matter, Defendant's labels grossly inflate the actual protein content of the Product. Plaintiffs' counsel performed testing on the Product for protein content, and it was determined to be far below the amount of protein claimed on the Product's label.  Based on Plaintiffs' testing, the Product generally contain 40%-50% less protein than stated on the label.  In short, Defendant is marketing a high protein cookie that simply doesn't deliver on the promised protein content.

19.     Defendant has also misrepresented other key nutrients in the Product, including the total calories, carbohydrates, fats and sugars.  Plaintiffs' counsel performed testing on the Product for the actual levels of the calories, carbohydrates, fats and sugars in the Product.  As expected, Defendant misrepresented all of these levels on the Product labels.

20.     On the Product label, Defendant represents that the entire Cookie (2 servings) contains between 360 and 400 calories.  However, according to Plaintiffs' testing the Product actually contains between 456 and 486 calories per 2 servings.

21.      On the Product label, Defendant represents that the entire Cookie (2 servings) contains between 48 and 56 grams of carbohydrates.  However, according to Plaintiffs' testing the Product actually contains between 60.6 and 76.8 grams of carbohydrates per 2 servings.

6

22. On the Product label, Defendant represents that the entire Cookie (2 servings) contains between 8 and 16 grams of fat. However, according to Plaintiffs' testing the Product actually contains between 14.02 and 18.94 grams of fat per 2 servings.

23. On the Product label, Defendant represents that the entire Cookie (2 servings) contains between 24 and 32 grams of sugars. However, according to Plaintiffs' testing the Product actually contains between 30 and 37.6 grams of sugars per 2 servings.

### *Daily Value Percentage of the Nutrients*

24. Additionally, Defendant's labeling is false and deceptive in that it miscalculates the % DV of protein. The United States Food and Drug Administration (the "FDA") has published a food labeling guide that specifically addresses nutrition labeling and protein claims. According to the FDA, "[t]he percent of the DRV is required if a protein claim is made for the product or if the product is represented or purported to be for use by infants or children under 4 years of age."[2] Here, the Product has a protein claim on the label and is required to have the % DV for protein listed in the Nutritional Facts section of the label.

25. According to the Federal Food, Drug and Cosmetic Act ("FDCA"), where a product label states the percent of DV for protein (as it does, here), the label percentage values must be ascertained via a testing methodology known as the Protein Digestibility Amino Acid Corrected Score ("PDCAAS"), which measures the actual **quality** of the protein contained in a product.

26. The PDCAAS has been adopted by the Food and Agriculture Organization of the United Nations and the World Health Organization as the preferred method for the measurement

---

[2] *Guidance for Industry: A Food Labeling Guide (7. Nutrition Labeling; Questions G1 through P8)*, U.S. FOOD & DRUG ADMINISTRATION, http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm064894.htm#declare (last visited September 7, 2016).

of the protein value in human nutrition, and the calculation formula for the PDCAAS is set forth in the FDCA. The PDCAAS shall be determined by the methods provided in sections 5.4.1, 7.2.1, and 8.00 in "Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation," Rome, 1990. 21 C.F.R. § 101.9(c)(7)(ii).

27. The PDCAAS calculation referenced under the FDCA is:

$$PDCAAS(\%) = \frac{mg \text{ of limiting amino acid in 1 g of test protein}}{mg \text{ of same amino acid in 1 g of reference protein}} \times fecal \text{ true digestibility } (\%) \times 100$$

28. The PDCAAS method does not simply calculate protein content by nitrogen analysis, but instead requires the manufacturer to determine the amount of essential amino acids contained within a product. This testing method ensures that consumers are being informed about the "quality" of the protein contained a product. PDCAAS measures protein quality based on human essential amino acid requirements and our ability to digest it. The test protein is compared to a standard amino acid profile and is given a score from 0-1.0, with a score of 1.0 indicating maximum amino acid digestibility. Common protein supplements (whey, casein, and soy) all receive 1.0 scores. Meat and soybeans (0.9), vegetables and other legumes (0.7), and whole wheat and peanuts (0.25-0.55) all provide diminished protein digestibility. The PDCAAS is currently considered the most reliable score of protein quality for human nutrition.[3]

29. As shown above, Defendant's Nutrition Facts section lists the Product as having 16% DV for protein. The 16% DV is based on the 50-gram DV required by the FDCA and the 8-gram per serving protein claim on the Product (8 grams / 50 grams = 16% DV). 21 C.F.R. § 101.9(c)(7)(iii).

30. When protein is listed as a percent of the 50-gram DV and expressed as percent of DV, the percent of DV is calculated by correcting the actual amount of protein in grams per

---

[3] Pasha Gurevich, *Protein Quality-The 4 Most Important Metrics*, LABDOOR MAGAZINE (May 20, 2014), https://labdoor.com/article/protein-quality-the-4-most-important-metrics.

serving by multiplying the amount by its amino acid score corrected for protein digestibility, dividing by 50 grams, and converting to a percentage. 21 C.F.R. § 101.9(c)(7)(ii). Defendant, however, simply used the nitrogen testing with a factor of 6.25 to determine the protein content. If Defendant had made no protein content claim on the label of the Product, and if it did not include the percent of DV of protein under the Nutrition Facts section, it could legally use this method. Given that Defendant's Product contains a protein claim on the label and lists protein as the percentage of DV in the Nutrition Facts section, Defendant is thus statutorily obligated under the FDCA to determine the protein content and percent of DV by using the PDCAAS, which it did not.

31. Defendant has failed to comply with the section for PDCAAS and determining the protein content making up the percent of DV. Defendant did not test for individual amino acids, and it did not use the proper factors as referred to in the FDCA. Defendant simply took the nitrogen count and then used the factor for whey protein, thereby overstating the percent of DV. Consequently, Defendant is in violation of 21 C.F.R. § 101.9(c)(7)(ii).

32. Also, the ingredients listed under the Product's "Protein Blend" (pea protein, brown rice protein and wheat gluten), have PDCAAS of approximately 0.70, 0.50, and 0.25, respectively.[4] Therefore, even if the protein content was 16 grams per cookie as the Defendant suggests, the percent of DV would be reduced because of the inclusion of a low quality proteins.

33. Because the PDCAAS is used to determine "protein quality," Defendant intentionally miscalculated the PDCAAS for the Product. The Product's label claim "16g Protein" is objectively false because the PDCAAS was not tested for properly by Defendant.

---

[4] *See* Hoffman, Jay R.; Falvo, Michael J. (2004). "Protein – Which is Best" (PDF). *Journal of Sports Science and Medicine*. 3 (3): 118–30; *see also* Suárez López MM, Kizlansky A, López LB (2006). "[Assessment of protein quality in foods by calculating the amino acids score corrected by digestibility]." *Nutrición Hospitalaria* (in Spanish). 21 (1): 47–51. PMID 16562812.

9

Also, given that Defendant's "16g Protein" is a protein content claim, as referenced in 21 C.F.R. § 101.9(c)(7)(i), because it is not based on the PDCAAS, it is false and misleading.

34. Despite having knowledge that miscalculating the percent of DV of protein and under-dosing the protein content is misleading to consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell the Product in a misleading and deceptive manner in order to increase its sales and maximize its profits.

35. Thus, Defendant's consumers pay an inflated price for the Product, which delivers less actual and quality protein than they reasonably expect to receive.

36. Further, the Daily Value percentages of Carbohydrates and Fats are inaccurate, because the actual amounts of these nutrients found within the Product were less than represented.

37. Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states,[5] which deem food misbranded when "its labeling is false or misleading in any particular."

38. Defendant's false, deceptive and misleading label statements are unlawful under State Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

39. Under the Illinois Food, Drug and Cosmetic Act, Illinois has expressly adopted the federal food labeling requirements as its own and has indicated that "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21(j). Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

---

[5] *See, e.g.*, 410 ILCS 620/11.

...
...

40. Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "[a] food shall be deemed to be misbranded—If (1) its labeling is false or misleading in any particular."

41. Also, the Illinois Compiled Statutes have incorporated the exact language of the FDCA by expressly stating, "[a] food is misbranded - (a) If its labeling is false or misleading in any particular." 410 ILCS 620/11.

42. The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all parallel Illinois statutes cited in this Third Amended Class Action Complaint.

43. The Illinois Consumer Fraud and Deceptive Business Practices Act protects consumers when purchasing products, including Defendant's Product, and provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . .

815 ILCS 505/2.

44. Defendant intended for Plaintiffs and the other Class Members to be misled regarding the claims made on its Product labels. Tellingly, Defendant recently began manufacturing and selling another product, the "Muscle Muffin." Defendant also markets the Muscle Muffin as a high protein product, representing that each muffin contains 15 grams of protein. While no allegations in this Complaint are currently directed to the Muscle Muffin, Plaintiffs' testing reveals that the nutritional claims Defendant has made with respect to the Muscle Muffin are also misleading and inaccurate. Just like Plaintiffs' testing has revealed with respect to the Complete Cookie Product, Plaintiff's testing also reveals that the Muscle Muffin contains substantially less protein and more carbohydrates, sugars and fats, than represented on

the label. The launch of the Muscle Muffin as another "high protein" product (presumably after Defendant's own testing), shows a pattern of intent by Defendant to mislead and/or defraud the public.

45. Defendant's misleading and deceptive practices proximately caused harm to the Plaintiffs and the Class. Notably, by letter dated May 4, 2017, Plaintiffs sent formal notice to Defendant advising Defendant that its sale of the Product violated various consumer protection statutes and also breached express and implied warranties.

## CLASS ACTION ALLEGATIONS

46. Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed Class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

47. Plaintiffs seek certification of the following Class:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product in Peanut Butter, Chocolate Chip, Snickerdoodle, Double Chocolate, Birthday Cake, Pumpkin Spice, Coconut Chocolate Chip, Oatmeal Raisin, and White Chocolate Macadamia flavors.

Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

48. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to hundreds of thousands. The

precise number or identification of members of the Class are presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records as Defendant sells directly to some Class members, and the books and records of the Defendant's retail partners. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

50. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

   a) The true nature of the protein content in the Product;

   b) The true nature of the nutrient content in the Product;

   c) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

   d) Whether Defendant's actions violate the State consumer fraud statutes invoked herein; and

   e) Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class Members.

51. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

52. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all such

13

claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

53. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the other members of the Class they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all members of the Class. Accordingly, the interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

54. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act
### On Behalf of the Illinois Class

55. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

56. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

57. Defendant intended that Plaintiffs and each of the other members of the Illinois Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

58. As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Illinois Class have sustained damages in an amount to be proven at trial.

59. Had Defendant disclosed the true quality of its Product, Plaintiffs and the other class members would not have purchased the Product, or would have paid substantially less for the Product.

60. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

### SECOND CLAIM FOR RELIEF
### Intentional Misrepresentation
### On Behalf of the Illinois Class

61. Plaintiffs incorporate the foregoing paragraphs 1 to 54 as if fully set forth herein.

62. Defendant has intentionally made material misrepresentations of fact concerning the nature of, and ingredients in, the Product.

63. Defendant knew that the intentional misrepresentations herein were false at the time they were made.

64. Defendant intended that Plaintiffs and members of the Class would rely on the false representations and purchase Defendant's Product.

65. Defendant's false representations are objectively material to reasonable consumers and therefore reliance upon such representations may be presumed as a matter of law.

66. Plaintiffs and members of the Class reasonably relied to their detriment on Defendant's intentional misrepresentations.

67. Defendant's intentional misrepresentations were a substantial factor in causing Plaintiffs and members of the Class to purchase the Product.

68. Defendant has acted with malice by engaging in conduct that was and is intended to cause injury to Plaintiffs and the members of the Class.

69. Defendant has committed fraud through its intentional misrepresentations, deceit, and/or concealment of material facts known to Defendant with the intent to cause injury to the purchasers of the Product.

70. As a proximate result of Defendant's intentional misrepresentations, Plaintiffs and the members of the Class suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**Pled in the Alternative to All Other Counts**
**on Behalf of the Illinois Class**

71. Plaintiffs incorporate the foregoing paragraphs 1 to 54 as if fully set forth herein, and raise this cause of action in the alternative to Plaintiffs' other claims.

72. Plaintiffs and the other members of the Class conferred benefits on Defendant by purchasing the Product.

73. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and the other members of the Class' purchase of the Product. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Class because they would have not purchased the Product if the true facts would have been known.

74. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the Class for their unjust enrichment, as ordered by the Court.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Class Action Complaint, pray for judgment and relief against Defendant as follows:

a) For an order: (i) declaring this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Class described herein; and (ii) appointing Plaintiffs to serve as representatives for the Class and Plaintiffs' counsel to serve as Class Counsel;

b) For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

c) For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

e) For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this complaint so triable.

Dated: March 23, 2018

Respectfully submitted,

By:   */s/ Richard L. Miller II*

Edward A. Wallace
Richard L. Miller II
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
T    312.246.2222
F    312.346.0022
eaw@wexlerwallace.com
rlm@wexlerwallace.com

Nick Suciu III
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Road
Bloomfield Hills, Michigan 48302
T    313.303.3472
nicksuciu@bmslawyers.com

Steven Wasserman (*Pro Hac Vice*)
Kathryn S. Marshall (*Pro Hac Vice*)
Karin R. Leavitt (*Pro Hac Vice*)

18

**WASSERMAN LAW GROUP**
5567 Reseda Blvd., Suite 330
Tarzana, CA 91356
T     818.705.6800
F     818.705.8634
skw@wassermanlawgroup.com
ksm@wassermanlawgroup.com
krl@wessermanlawgroup.com

*Counsel for Plaintiffs and the Putative Classes*

## **CERTIFICATE OF SERVICE**

I hereby certify that I, Richard L. Miller, II, caused a copy of the foregoing third amended complaint to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.


Date: March 23, 2018                                          /s/ Richard L. Miller, II